*Court of Common Pleas Lebanon County; June 29th, 1867.*

### LIGHT & LIGHT *v.* HEILMAN.

The words " on store," in a receipt for grain delivered at a warehouse, ordinarily
    means that the grain is sold to a miller or warehouseman, and that the
    market price is to be demanded at such time as suits the person leaving the
    grain; but the actual intention of the parties may be shown by parol.

BY THE COURT.—The legal effect of the words "*on store*," in
a receipt for grain delivered in a warehouse in Lebanon county,
has received judicial construction, and means, under the custom
as established in that, and perhaps in several other neighboring

[Light & Light *v.* Heilman.]

counties, that the grain is sold to the miller or warehouseman, and that the price is to be lifted at such time as suits the person leaving the grain, and at such rate as it is then bringing in the market. Although such is the effect of the instrument as explained, yet as the natural import of the words is otherwise, the actual intention of the parties may be shown by parol. It may be proved that both parties designed that the grain should merely be *stored*, and thus remain the property of the person storing.

Whether the arrangement relative to the grain in dispute was a sale, the price to be fixed at an after time, or a mere bailment to the warehouse-keeper " *on storage*," was the main point in controversy on this trial. Mr. Rupp, who kept the warehouse, and gave the receipt, testifies in substance that the grain was all sold in the usual way, and on the terms indicated by the writing as generally understood; that no qualifying special contract was made; no agreement that the defendant could have his grain again, if not satisfied with the price, or if desired. On the other hand Bricker states that after one load was delivered, and the rest of it emptied, he told Rupp that he had been at Krider's to find a place to store the wheat, and was told he could do so; if the price suited might take it up, and if not, could take it away; to which Rupp replied, "This same chance is here too." They then left the grain from time to time, and took the receipts. If the jury believed the evidence of Bricker, this was not a sale, but merely a deposit of the grain. If they confided in Rupp, the grain was sold, and could not be reclaimed by Heilman, but passed to the plaintiffs by the assignment. Rupp was very considerably contradicted (mainly as to collateral facts, yet important in the case) by other witnesses; but he is supported by the papers drawn in the form mentioned, and the question was fairly left to the jury on the whole evidence. We are not prepared to say that their finding was so far, and so clearly erroneous, as to call for the interposition of the court. A writing is not to be overturned in its *legal effect, or explained away by parol*, unless the evidence be very clear; and although we might differ in opinion with the jury on the weight of the evidence, yet that is no reason for setting aside the verdict. They might with great propriety give weight to the writing, as given on the one hand and accepted and retained on the other, as being the least evidence of the contract as ultimately made, rather than to the conversation which led to it; and believed that the owner of the grain accepted the receipts in the well-known form adopted by dealers through the county, and parted with the title to his property, not expecting to reclaim it in any event.

On the whole, although we expected a different verdict from the jury, we cannot, according to the rules of law, set it aside without trenching on the rights of that tribunal, whose peculiar

[Weimer *v.* Weimer.]

duty it is to settle disputed facts, and decide on the credibility of the witnesses.

The motion for a new trial is overruled.

*Funck, for plaintiff.*

*Weidman, for defendant.*

---

*Court of Common Pleas, Lebanon County, June 28th, 1867.*

